IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

F I L E D
SEP 1 0 2012
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

Ian Ralph Blackstock, )
    Petitioner, )
     )
v. ) 1:11cv666 (JCC/IDD)
     )
H. L. Hufford, )
    Respondent. )

## MEMORANDUM OPINION

Ian Ralph Blackstock, a federal inmate currently housed at the Schuylkill Federal Correctional Institution in Pennsylvania and proceeding pro se, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 in the District Court for the Middle District of Pennsylvania, claiming actual innocence based on United States v. Watson, 552 U.S. 74 (2007). By Order dated May 6, 2011, that Court granted petitioner leave to proceed in forma pauperis. Because Blackstock was convicted and sentenced in the Eastern District of Virginia, the matter was transferred for adjudication to this Court on June 21, 2011. See Blackstock v. Hufford, 2011 WL 2470415 (M. D. Pa. June 20, 2011).[1] Now before the Court is respondent's Motion for Summary Judgment, with a supporting memorandum and exhibits, which were filed on September 12, 2011. Petitioner was provided with the notice required by Local Rule 7(K) and

---

[1] A § 2241 petitioner challenging his present physical custody generally must file his application in his district of confinement. Rumsfeld v. Padilla, 524 U.S. 426, 443 (2004). In this case, however, after Blackstock filed his § 2241 petition in his district of confinement, the government requested transfer to this district, where Blackstock was sentenced. The Pennsylvania court found that the government's request amounted to a waiver of the Rumsfeld territorial-jurisdiction rule and granted the transfer, without prejudice to Blackstock's ability to reinstate the action in that court or to file a new petition in any district of confinement if the instant petition is denied or dismissed for lack of jurisdiction. Blackstock v. Hufford, No. 4:CV-11-0791 (Docket # 7).

Roseboro v. Garrison, 538 F.2d 309 (4th Cir. 1975), and he has filed a response, to which respondent has replied. For the reasons which follow, respondent's Motion for Summary Judgment will be granted, and the petition will be dismissed, without prejudice, for lack of jurisdiction. Because it appears that the sole appropriate avenue for the relief petitioner seeks is a motion to vacate pursuant to 28 U.S.C. § 2255, and because petitioner previously filed such a motion without success, he will be provided with a form motion to seek an order from the Fourth Circuit Court of Appeals pursuant to 28 U.S.C. § 2244 to allow this Court to consider his claim of actual innocence on the merits.

## I. Background

In September, 1993, Blackstock was charged in an 87-count indictment with crimes arising from a conspiracy in which he obtained at least 113 firearms through straw purchases, and paid his coconspirators with cash and crack cocaine.[2] On December 2, 1993, Blackstock pleaded guilty to two counts of the indictment, both of which charged him with violating 18 U.S.C. § 924(c) by using firearms during and in relation to drug trafficking offenses. In exchange, the United States dismissed all of the remaining counts, and Blackstock received a

---

[2]The Statement of Facts supporting the guilty plea explains:

> In each straw transaction, BLACKSTOCK would select the firearms to be purchased and provide the funds for that purchase to the straw purchaser. Following the straw transaction with the licensed dealer, BLACKSTOCK would receive the firearms so purchased from the straw purchaser. BLACKSTOCK would then pay the straw purchaser for making the transaction in either cash, cash and cocaine base (crack), or by reducing an outstanding debt which one of the straw purchaser owed BLACKSTOCK for cocaine.

Gov't Ex. 1 at 2.

sentence of 60 months incarceration on one count and a consecutive term of an additional 240 months on the second count. See United States v. Blackstock, 1:93cr350 (JCC).

On May 10, 2001, Blackstock filed a Motion for an Order to Produce Books, Papers and Tangible Objects. The Court recharacterized the motion as seeking relief under 28 U.S.C. § 2255 and denied it as untimely in an Order dated June 4, 2001. Blackstock's June 18, 2001 Motion for Reconsideration was denied in an Order entered July 3, 2001.

Blackstock filed a Petition for Relief from Judgment pursuant to Fed. R. Civ. P. 60(b) on September 7, 2005, challenging the recharacterization of his 2001 discovery motion as a motion to vacate. In addition, he simultaneously filed a § 2255 motion. In a Memorandum Opinion and Order dated October 7, 2005, the Court found that Blackstock's case fell within an exception to the rule announced in United States v. Emmanuel, 288 F.3d 644 (4th Cir. 2002) that district courts may not *sua sponte* recharcetrize motions not denominated as § 2255 motions without first giving the defendant notice of the potential adverse consequences of doing so. The Court denied Blackstock's Rule 60(b) motion and dismissed his § 2255 motion as successive. See Blackstock v. United States, 2005 WL 2491463 (E.D.Va. Oct. 7, 2005). On appeal, however, the Fourth Circuit found that Emmanuel's exception to the notice requirement had been overruled by the Supreme Court in Castro v. United States, 540 U.S. 375 (2003). Applying Castro to Blackstock's case, the appellate court found that the failure to provide Blackstock with notice before recharacterizing his 2001 discovery motion rendered that action improper, such that his 2005 § 2255 motion in effect was his first such motion, and its dismissal as successive was error. The judgment accordingly was vacated, and the matter was remanded for consideration of whether the 2005 motion to vacate had been filed timely. See United States v. Blackstock, 513

3

F.3d 128, 133 - 35 (4th Cir. 2008).

On remand, the Court directed Blackstock to show cause why his motion should not be dismissed as time-barred by operation of the one-year limitations period of 28 U.S.C. § 2244(d). Before responding to the Court's order, Blackstock moved to amend his § 2255 motion to add a claim for relief based in relevant part on the then-recent case of Watson v. United States, 552 U.S. 74 (2007), where the Supreme Court held that a person does not "use" a firearm under 18 U.S.C. § 924(c)(1)(A) when he receives it in trade for drugs. By Memorandum Opinion and Order dated September 2, 2008, the Court denied both the Motion to Vacate and the Motion to Amend, on the holdings that Blackstock's § 2255 application was filed untimely, and that the untimeliness was not remedied by Blackstock's attempted amendment to add a Watson claim. See Blackstock v. United States, 2008 WL 4167811 (E.D.Va. Sept. 2, 2008). Blackstock's appeal of that determination was dismissed by unpublished opinion on December 20, 2010. United States v. Blackstock, 405 Fed. App'x 727, 2010 WL 5230882 (4th Cir. Dec. 20, 2010).

On or about April 14, 2011, Blackstock filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, reiterating his argument that he is actually innocent of the two charges to which he pleaded guilty because, under Watson, he did not "use" a firearm during and in relation to a drug offense. In his Motion for Summary Judgment, respondent argues that he is entitled to such relief on the grounds that: (1) this Court lacks jurisdiction to entertain Blackstock's § 2241 application; (2) Blackstock's petition should be deemed untimely; (3) even if this Court had jurisdiction to entertain Blackstock's § 2241 petition, his Watson claim is procedurally defaulted; and (4) in any event, Blackstock's Watson claim is without merit. Petitioner has filed a response opposing respondent's position, and respondent has filed a reply.

For the reasons which follow, the Court finds that it has no jurisdiction under § 2241 to entertain petitioner's claim, and that petitioner's suggestion that a writ of error coram nobis provides a suitable alternate remedy is misplaced. As it appears that petitioner's actual innocence claim would be cognizable solely in a motion to vacate pursuant to 28 U.S.C. § 2255, the dismissal of this petition will be without prejudice to petitioner's ability to seek an order from the Fourth Circuit Court of Appeals authorizing this Court to consider his claim under that provision.

## II. Standard of Review

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The moving party bears the burden of proving that judgment on the pleadings is appropriate. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (moving party bears the burden of persuasion on all relevant issues). To meet that burden, the moving party must demonstrate that no genuine issues of material fact are present for resolution. Id. at 322. Once a moving party has met its burden to show that it is entitled to judgment as a matter of law, the burden then shifts to the non-moving party to point out the specific facts which create disputed factual issues. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, a district court should consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Those facts which the moving party bears the burden of proving are facts which are material. " [T]he substantive law will

identify which facts are material. Only disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. An issue of material fact is genuine when "the evidence ... create[s] [a] fair doubt; wholly speculative assertions will not suffice." Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985). Thus, summary judgment is appropriate only where no material facts are genuinely disputed and the evidence as a whole could not lead a rational fact finder to rule for the non-moving party. Matsushita, 475 U.S. at 587.

### III. Analysis

"[I]t is well established that defendants convicted in federal court are obliged to seek habeas relief from their conviction and sentences through § 2255." Rice v. Rivera, 617 F.3d 802, 807 (4th Cir. 2010). Actions pursuant to § 2241 generally are reserved for claims concerning the execution of a sentence. In re Vial, 115 F.3d 1192, 1194 n.5 (4th Cir. 1997). "However, § 2241 may be utilized by a federal prisoner to challenge the legality of his or her conviction or sentence if he or she can satisfy the mandates of the so-called § 2255 'savings clause.'" Reyes-Requena v. United States, 243 F.3d 893, 901 (5th Cir. 2001). That provision states:

> An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.

28 U.S.C. § 2255 (e). The Fourth Circuit has developed a three-part test to determine whether a petition challenging the lawfulness of a conviction or sentence can be brought under § 2241:

> Section 2255 is inadequate and ineffective to test the legality of a

6

> conviction when: (1) at the time of the conviction, settled law of this circuit or the Supreme Court established the legality of the conviction; (2) subsequent to the prisoner's direct appeal and first § 2255 motion, the substantive law changed such that the conduct of which the prisoner was convicted is deemed not to be criminal; and (3) the prisoner cannot satisfy the gatekeeping provisions of § 2255 because the new rule is not one of constitutional law.

In re Jones, 226 F.3d at 333-34. "In short, under the Jones rule a federal prisoner is entitled to pursue a § 2241 motion only when he had no opportunity to utilize a § 2255 motion to take advantage of a change in the applicable law. If, conversely, the prisoner had an unobstructed procedural shot at filing a § 2255 motion to take advantage of such a change, a § 2241 motion is unavailable to him, and any otherwise unauthorized habeas motion must be dismissed for lack of jurisdiction." Rice, 617 F.3d at 807. Significantly, "the remedy afforded by § 2255 is not rendered inadequate or ineffective because an individual has been unable to obtain relief under that provision, or because an individual is procedurally barred from filing a § 2255 motion." Vial, 115 F.3d at 1194 n. 5; see also, Waters v. United States, 2012 WL 1431392 (D.S.C. Apr. 3, 2012), adopted, 2012 WL 1434857 (D.S.C. Apr. 25, 2012) at *3 ("That a Section 2255 action may be untimely or successive does not render it an inadequate or ineffective remedy.").

Here, as respondent argues, Blackstock cannot satisfy the first two prongs of the Jones test. First, when Blackstock entered his plea of guilty on December 2, 1993, the legality of the conviction remained unsettled in this circuit. Six months earlier, on June 1, 1993, the Supreme Court held in Smith v. United States, 508 U.S. 223 (1993), that a defendant who hands over a gun and receives drugs in return "used" the firearm for purposes of § 924(c). The converse situation, which occurred in this case and ultimately was decided in Watson, had not been addressed at that point by either the Supreme Court or the Fourth Circuit. Indeed, the Court in

7

Watson stated expressly that it was "resolv[ing] a conflict among the Circuits on whether a person 'uses' a firearm within the meaning of 18 U.S.C. § 924(c)(1)(A) when he trades narcotics to obtain a gun," Watson, 552 U.S. at 78, because four circuits had held in published opinions between 1997 and 2005 that Smith did not control the situation where a defendant had received a gun, and that under such circumstances the gun was not "used." Id. at 78 n. 5. The Court stated that its two prior decisions concerning the meaning of "use' in § 924(c), Smith and Bailey v. United States, 516 U.S. 137 (1995), had "rested primarily on the 'ordinary or natural meaning' of the verb in context." Watson, 552 U.S. at 77. The Court found that the government's position that a defendant who receives a gun in exchange for drugs "uses" it within the meaning of § 924(c) was without merit and "lack[ed] authority in either precedent or regular English. To begin with, neither Smith nor Bailey implicitly decides this case." Watson, 552 U.S. at 78.

Moreover, the Court in Watson observed that the Fourth Circuit did not address the question of whether a defendant "used" a firearm when he gave drugs to a compatriot in exchange for assistance in obtaining a gun until 1994, the year after Blackstock entered his plea. Watson, 552 U.S. at 78, n. 5, citing United States v. Harris, 39 F.3d 1262 (4th Cir. 1994). Subsequently, unpublished opinions in this circuit "relied on Harris for the proposition that the receipt of a firearm in exchange for drugs constitutes the use of the firearm." Id., citing United States v. Belcher, No. 98-4845, 199 WL 1080103 (C.A.4, Nov. 29, 1999) (*per curiam*).

In short, at the time Blackstock entered his plea and was convicted in 1993, settled law did not establish the legality of the conviction. The only Supreme Court authority that existed at that time relevant to the interpretation of the term "use" in § 924(c) was Smith, which dealt with the factual obverse of Blackstock's situation and thus, as the Court would later observe in

8

Watson, did not "implicitly decide[]" the issue that Watson ultimately settled. 552 U.S. at 78. Nor would the Fourth Circuit speak to the issue until it released its opinion in Harris in 1994, subsequent to the entry of Blackstock's convictions. Thus, the first requirement of Jones, that **"at the time of the conviction, settled** law of this circuit or the Supreme Court established the legality of the conviction," is not met in this case.[3]

Nor does Blackstock meet the second prong of the Jones analysis. That provision requires that for § 2255 to be inadequate or ineffective to test the legality of a conviction, "subsequent to the prisoner's direct appeal and first § 2255 motion, the substantive law changed such that the conduct of which the prisoner was convicted is deemed not to be criminal." 226 F.3d at 333-34. Here, Blackstock's conduct of receiving a gun in exchange for drugs was deemed not to be criminal in Watson which, as Blackstock himself acknowledges, was decided "while [his] Section 2255 motion was pending." Blackstock Resp. at 3. Indeed, as set forth above, Blackstock moved to amend his § 2255 application to add a claim based on Watson. It thus requires no detailed analysis to conclude that Blackstock cannot show that the applicable law changed "subsequent to [his] ... first § 2255 motion." Because the situation at bar thus does not satisfy two parts of the test applicable in this circuit to determine whether a claim challenging the lawfulness of a federal conviction can be brought under § 2241, there presently exists no

---

[3]Blackstock's argument that "at the time of [his] conviction reasonable jurists accepted the view that settled law of the of the Supreme Court appeared to support the legality of the Section 924(c) conviction," supported only by reliance on circuit decisions issued well after he entered his plea, misses the mark. Blackstock Resp. at 3. The applicable legal standard looks not to what a reasonable jurist might predict the future course of the law to be, but rather depends on what is "settled" "at the time of the conviction." Jones, 226 F.3d at 333-34. Here, for the reasons discussed above, the applicability of § 924(c) to facts analogous to those in Blackstock's case was not "settled" at the time of his conviction, such that he was not foreclosed from taking, and indeed arguably could have prevailed on, a direct appeal on that very point of law.

jurisdiction to entertain this petition as filed.[4] See Wilson v. Flaherty, __ F.3d __, 2012 WL 3329239 at *6 (4th Cir. Aug. 15, 2012) ("[T]he strength of his claim on the merits cannot confer subject matter jurisdiction on a federal habeas court.")

In his response to the Motion for Summary Judgment, Blackstock suggests that if the Court is without jurisdiction to entertain his claim under § 2241, relief could still be granted in this proceeding by construing his motion as a petition for writ of error coram nobis. Blackstock Resp. at 4. It is true that under the All Writs Act, 28 U.S.C. § 1651 (a), federal courts have the power to grant a writ of error coram nobis to vacate a conviction. United States v. Morgan, 346 U.S. 502 (1954); United States v. Mandel, 862 F.2d 1067, 1074-75 (4th Cir. 1988), cert. denied, 491 U.S. 906 (1989). However, considered a "remedy of last resort," Fleming v. United States, 146 F.3d 88, 89 (2d Cir. 1998), a writ of error coram nobis is an "extraordinary" remedy to be granted only "under circumstances compelling such action to achieve justice." Morgan, 346 U.S. at 511; see Carlisle v. United States, 517 U.S. 416, 429 (1996) (stating that "it is difficult to conceive of a situation in federal criminal cases today where [a writ of error coram nobis] would be necessary or appropriate"). The writ may issue only where an error "of the most fundamental character" has occurred and no alternative remedy is available. Mandel, 862 F.2d at 1075.

Because petitioner in this case does not satisfy the mandates of the savings clause, it is true that no alternate remedy to coram nobis is immediately available to him. However, under

---

[4]To be sure, several courts by now have allowed Watson claims to go forward in § 2241 proceedings. See, e.g., Short v. Schultz, 2008 WL 1984262 (W.D. Va. May 6, 2008). What distinguishes this case is the petitioner's inability to meet the first two Jones criteria - that is, to show both that the change in law announced in Watson was settled when he was convicted, and that it was unavailable to him as a ground for relief when he filed his first § 2255 motion. Cf. Short at * 3 ("[O]nly after his direct appeal and his unsuccessful § 2255 motion did the Supreme Court issue the Watson decision ....").

certain circumstances the appropriate Circuit Court of Appeals can authorize a district court to entertain on the merits a second or successive § 2255 motion to vacate challenging the lawfulness of a federal conviction, and actual innocence claims such as Blackstock's "fall within the purview of § 2255." Otto v. Williamson, 140 Fed. App'x 437, 438 (3d Cir. 2005). Coram nobis thus will not lie here, because an alternate remedy exists. For the same reason, the Court declines to reach the respondent's arguments that even if jurisdiction did exist to entertain this § 2241 petition, it should be denied on the merits or on procedural grounds as defaulted. While it cannot be gainsaid that petitioner faces a significant challenge to overcome the procedural hurdles which arguably may block a court's ability to reach the merits of his claim in a successive § 2255 proceeding, at this juncture it appears that that slim window of opportunity is the only legally appropriate avenue available to him to vindicate his claim. See Waters, 2012 WL 1431392 at * 3 (noting that "[m]any federal prisoners ... have erroneously attempted to overturn federal convictions or sentences by filing a Section 22441 action," and finding that petitioner's Watson claim was "cognizable, if at all, under 28 U.S.C. § 2255....").

## IV. Conclusion

As no jurisdiction presently exists to consider the merits of Blackstock's claim under § 2241, respondent's Motion for Summary Judgment will be granted, only to the extent that petitioner can receive no relief on his claim at this time. In the interest of justice, the Court will dismiss the petition for lack of jurisdiction, without prejudice to petitioner's ability to seek certification from the United States Court of Appeals for the Fourth Circuit to allow the District

11

Court for the Eastern District of Virginia to consider his claim of actual innocence in a successive § 2255 proceeding. An appropriate Order shall issue.

Entered this 10 day of Sept, 2012.

Alexandria, Virginia

/s/
James C. Cacheris
United States District Judge